## MISSISSIPPI POWER CO. v. SELLERS.

(Division A. March 30, 1931.)

[133 So. 594. No. 29080.]

Baskin, Wilbourn & Miller, of Meridian, and **Deavours & Hilbun**, of Laurel, for appellant.

Currie & Currie, of Hattiesburg, for appellee.

Argued orally by **R. E. Wilbourn,** for appellant, and by
**D. T. Currie** and **N. T. Currie,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

Appellee, Sellers, filed a declaration against appellant,
Mississippi Power Company, and Edgar Parker, jointly,
for damages on account of personal injuries received in
a truck wreck, and recovered a judgment for five thou-
sand dollars against the appellant, the Mississippi Power
Company, and Parker.

It was alleged that the truck in which the appellee was
riding was being driven from his home along the pub-
lic highway known as the Albertson and Estabuchie
Road; and that said truck was in the use, possession,
and control of Edgar Parker and operated by him; that
Parker negligently and improperly, and without due re-
gard for the safety of his guest, drove the truck at a
speed that was improper, because of the condition of the
said road and of the fact that the Mississippi Power Com-
pany had erected its poles within the right of way of
said road and had thereby placed a dangerous obstacle

and obstruction therein, which endangered the lives and limbs of persons driving motor vehicles upon the said road and riding in motor vehicles on and over said road; that Parker drove at such speed that he could not control the motortruck, and it was alleged that there was a two-wheeled trailer attached or drawn by the truck, and that the trailer would lurch or swing to the outer edge of the highway because of the speed of the truck and the condition of the road and the curves therein, and there was danger of said trailer and truck striking any object on the edge of said highway; and that because of said facts the truck was wrecked and Sellers was injured. It was further alleged that while so driving Parker struck a pole erected by the Mississippi Power Company and wrecked the motortruck and injured the appellee. It was further alleged that the erection of poles and lines on the public highway was unlawful and dangerous to the traveling public; that the width of the road was fifty or sixty feet at this point; and that all of the fifty-foot right of way was for the exclusive use and benefit of the traveling public.

The appellant, the Mississippi Power Company, filed a plea of the general issue to the declaration, and gave notice thereunder that it was a corporation organized for the purpose of developing water power of rivers and streams for generally distributing and selling electricity and electric mechanical power within the meaning of chapter 179, Laws of 1924, as amended by chapter 233, Laws of 1926; and that in virtue of said statutes it was legally authorized to erect its poles and lines upon the public highway of the state; that the pole upon which complaint was made by appellee was not within any portion of the road worked and opened for public travel, but was entirely outside the traveled way, separated therefrom by a drainway, and did not interfere with the common use of the road and was so constructed and placed as not to be dangerous to the traveling public using the highway in the exercise of ordinary care for

their safety. It also gave notice that it would show that the truck and trailer was being driven at a rate of speed in excess of thirty miles an hour and was going around a curve in excess of ten miles an hour, in violation of law and without having the truck under control.

Appellee filed a response to this notice in which he reasserted in detail that which had been alleged in the declaration generally.

Parker, through his counsel, filed a plea of the general issue and gave notice that he would prove that the injuries received by Sellers were not the result of negligent driving on his part, but that the negligence was solely due to the unlawful erection of the pole in the highway, and that Sellers' injury was entirely due to the carelessness and negligence of the Mississippi Power Company in placing the pole in the highway.

From the judgment and verdict the Mississippi Power Company prosecutes an appeal. Parker does not appeal.

The appellant, the Mississippi Power Company, requested a peremptory instruction which was refused by the court below and which is the main assignment of error. There are other errors assigned, but as, in our opinion, the refusal of this instruction was erroneous, we shall not consider any others.

On April 27, 1929, Parker, a minor, drove his father's Chevrolet truck, with a two-wheel trailer attached, south along the highway in question to the home of Sellers. Parker was not an employee or in any way connected with the Mississippi Power Company. He was accompanied by Long and left the home of the appellee accompanied by Long and Sellers; on the return to Moselle they drove north on said highway, which placed the truck and trailer on the east side of the road. The truck was a chassis without body but had a seat for the driver, and on this seat was Parker, who was driving the car, on the left side; appellee on the right or east side; and Long was between them. The trailer was without body but

attached to the truck and extending back about eight feet from the truck.

Stating the facts succintly and drawing all reasonable inferences therefrom favorable to the appellee, they are summed up in this statement: Some distance before they reached the curve where the wreck occurred, Sellers remonstrated with Parker about his reckless driving; Parker slowed down and picked up again, and when they reached the curve the truck swerved to the left, then headed to the right, leaving the gravel and the worked part of the road adjacent to the gravel, and went over toward the fence, the trailer striking the fence, then the truck headed back toward the center of the road and passed the pole in safety, but the trailer struck the pole and the truck was thereby overturned, the appellee thrown therefrom and seriously and permanently injured.

In 1927 the road on this point had theretofore been used by the traveling public and recognized by the county as a public highway, and in that year it was improved by state and federal engineers under contract from the board of supervisors of the county. The road was widened by the improvement, and at this point and along the highway the county procured and paid for additional land, set back a barn and the fence, and established the line between the adjacent owners and the highway. There is no dispute that the right of way thus acquired by the county, including that which had already been used, was fifty feet. The new road constructed by the authorities was twenty-four feet wide generally with twelve feet of gravel spread in the center. There was a slight fill at the point where the accident occurred, which was on the bend of an S curve of about six degrees. At the precise point opposite the pole the highway as filled and improved was twenty-six feet wide. From the outer edge on the east side of the pole was eight feet, or the pole was twenty-two and one-half feet. from the center of the improved highway. From the

pole to the fence was two and one-half or three feet. There was much examination of witnesses on the question of whether or not there was a ditch between the pole and the outer edge of the highway. Much energy is expended in the briefs on this question, there being an effort on the part of the appellee to show that there was practically no difference in the highway at the point where the pole was located and elsewhere within the right of way, but a careful reading of the evidence in the case discloses that even Sellers speaks of a depression, caused by the throwing up of the dirt to the worked portion of the road, as a ditch, as does every witness who was interrogated on this point; so, it is established that there was a ditch caused by grading the road, using the dirt on the side to make the fill on which to spread the gravel and maintain the shoulders on either side of the road. In our opinion there was a depression marked on the ground; whether it be called a ditch, borrow pit, or depression is immaterial. The pole of the appellant placed in the ground at this point and extending toward the sky was not within the used portion of the road; it was not within that part of the right of way which one would expect to travel. Witnesses did testify that a truck could be driven across the depression and along the outer edge of the right of way, but it is clearly and overwhelmingly established that the county prepared and signified to the public that it should use the twenty-four foot road, prepared as we have described. By the profile of the road as prepared by the engineers, and the manner of its construction, this is clearly and undoubtedly established. The proof shows that the power company had constructed its line of poles and wires along this point about one year before this accident occurred, with the knowledge of one member of the board of supervisors who had theretofore assumed authority to purchase additional right of way and have the road constructed. No minutes of the board of supervisors were introduced by either side. As to whether or not the road

was authorized by the board of supervisors, or as to whether or not the board of supervisors had in any way indicated to the Mississippi Power Company anything regulating the manner or place where their construction should take place, this record is silent. The pictures of the road at the scene of the accident clearly demonstrate what part of the road was used by the traveling public and prepared by the authorities for the use of the traveling public. These pictures together with the profile of the road clearly settle that question beyond controversy. The pole was not within the space which the county had prepared for the common use of the travelers and which it had, in a manner, invited the traveling public to use.

On the facts then, without reference to the statute, is there liability as against the power company? Let it be understood that the most favorable witness for the appellee places the pole within three feet of the east line of the right of way. It is hard to conceive how the poles and lines could have been constructed upon the right of way and have been placed at a point farther from that which is described, delineated, and established as the traveled way. When we consider that the poles are placed in the ground in a perpendicular manner, and that near the top of the pole cross-arms are attached which extend to either side of the pole, on which cross-arms the glass insulators are placed to which the wires are attached, then we can see that the poles could not have been placed at all upon the right of way farther from the used portion of the road without the cross-arms and wires extending over on private property.

It is quite well settled that a municipality may allow and set apart a portion of its right of way for the erection of poles to which are to be attached wires for the transmission of electric light and for telephone and telegraph purposes.

In the case of Gulfport & Mississippi Coast Traction Co. v. Manuel, 123 Miss. 266, 85 So. 308, 309, Judge

ETHRIDGE as the organ of the court adopted the language in 28 Cyc. 853, using these words: "It is insisted by the plaintiff that it was negligence for the city and the traction company to erect within the limits of the street the poles in question; that the street must be kept in a reasonably safe condition for travel. While the street must be used for public purposes, it is not necessary for the entire space to be kept in condition for travel. The city may lawfully use the street for the construction of sewers, for drainage, to lay gas or water pipes, or to erect poles or string wires for electric lights, or to construct a wharf at the terminus of the street, or convert a promenade into wharves, or set apart for a boulevard a portion of a street not devoted to business purposes."

We think this case controls the decision of this question here under consideration. That the people in the country and throughout the commonwealth are as much interested in having these conveniences as those living within urban communities is beyond cavil, and that the county, in acquiring land for a right of way beyond that which is necessary for travel, had this in mind, may well be assumed. The extent of the obligation of the county as well as the city in working its streets or roads is to keep them reasonably safe for general use; it is not required to have them in such condition as to insure the safety of reckless travelers. See also Walker v. Vicksburg, 71 Miss. 899, 15 So. 132; Butler v. Oxford, 69 Miss. 618, 13 So. 626; Nesbitt v. Greenville, 69 Miss. 22, 10 So. 452, 30 Am. St. Rep. 521; and McComb v. Hayman, 124 Miss. 525, 87 So. 11.

Judge Ethridge also says in the Gulfport & Miss. Coast Traction Company case: "A user of vehicles is not entitled to the entire street from property line to property line. The street not only serves the needs of the traveling public, but serves also the purpose of furnishing the public the conveniences above set out." The principle is equally applicable to the public highways in the country as to streets in municipalities.

The driver of this truck was reckless in his violation of the law both as to speed on the highway and as to the speed around the curve, and was a menace not only to himself and his companions in the truck but to any traveler who might have happened to be on that highway on that afternoon. It was daylight. He was not meeting anybody. No emergency of any kind is shown in this record, or reason for the truck swerving first to the left and then to the right leaving the graded part of the highway and also leaving the dirt traveled portion and going out against the fence. The appellee was bound to admit on cross-examination that he could not account for the action of the truck except that Parker had lost control thereof, due to his speed. So, if the power company had authority under the statute to erect its poles and lines in and upon the highway, the case is clearly within the rule set forth in the Manuel case, supra. As to speed, see chapter 201, Laws 1928.

Did the statute cited above grant the power company the right to construct its poles and lines in and upon the right of way as was done in this case?

The power company claims that it derives its power and right to erect its poles on this public highway by virtue of chapter 233, Laws of 1926, which is as follows: "Sec. 2. That all companies or associations of persons incorporated or organized for such purposes are authorized and empowered to erect, place and maintain their posts, wires and conductors along and across any of the public highways, streets or waters and along and across all turnpikes, railroads and canals, and also through any of the public lands; but the same shall be so constructed and placed as not to be dangerous to persons or property; nor interfere with the common use of such roads, streets, or waters; nor with the use of the wires of other wire using companies; or more than is necessary with the convenience of any landowner." This amendment omits these words from section 2, chapter 179, Laws of 1924, "and in case it shall be necessary to cross any highway,

the same shall be so constructed as to cross such highway at right angles.'' It is not controverted that the Mississippi Power Company is of the class described in section 1 of this act.

We have already ascertained that the pole in controversy was placed about as far from the traveled way as possible and at the same time be wholly upon the public land. There is nothing to indicate that placing the pole as far as possible from the traveled way would be dangerous, nor would it interfere with the normal use of the traveled highway. The fact that a driver might be able to use the unimproved portion of the right of way belonging to the county is no excuse therefor; and no cause reasonable or unreasonable, logical or illogical, is assigned in this case for traveling from the used and improved part of the highway to that part which was clearly not intended for public travel. The injury was the result of the reckless driving of Parker, and not of the placing of the pole at the distance we have indicated from the improved or graded part of the highway; by improved we mean that part which was prepared by the county and used by the public for traveling purposes of all kinds. Nor can it be said that the pole eight feet from the traveled road interfered with the normal ordinary use of that highway by the traveling public, or, in the language of the statute, ''common use,''

This view drives the appellee to the contention that the language of the statute ''along and across'' does not mean ''in and upon'' the right of way owned for public highway purposes. In the first place, section 2 of chapter 179 is entitled, ''May erect and maintain poles, etc., on, across and along highways, etc.;'' but in the body of the statute the word ''on'' is omitted. The same section, appearing as section 1506, Code of 1930, was thought by the code commissioners to mean the same thing, because it is so titled. But did the Legislature enact a statute that had no meaning? If we adopt the meaning sug-

gested by counsel for appellee, it means that electric light companies of the class named in the statute may erect their poles on the lands outside the right of way belonging to private individuals, a power which the Legislature could not grant. The Legislature had no control of lands of abutting owners along the right of way and could not grant the power or right to electric light companies to erect their poles and lines on private property. Other statutes grant them the power to condemn private lands under the power of eminent domain.

We are of the opinion that this statute must be given a meaning, and it is clear that the Legislature intended to grant the power in the manner prescribed to the corporations designated to erect their poles and lines in, on and upon the public highway. This view and this construction of the statute as to the meaning of the words "along and across" is sustained by other courts. See Town of Nappanee v. Ruckman, 7 Ind. App. 361, 34 N. E. 609; Ryan v. Preston, 32 Misc. Rep. 92, 66 N. Y. 162; and Heath v. Des Moines & S. L. Ry. Co., 61 Iowa, 11, 15 N. W. 573, 574. In the latter case the court said that the word "along" does not necessarily mean by the side of. We think the language of the Supreme Court of Iowa should be applied here to the case before us; that court said: "We cannot think that the city council, by the change of phraseology, intended to authorize the defendant to construct its road by the side of the alley, on private property over which the city had no control." We do not think in the instant case that the Legislature intended to say that it would grant the right to erect poles and lines by the side of the highway on property privately owned, over which the Legislature had no control, but that by the use of the words "along and across" it meant "in and upon" the property over which it had control. No question is raised as to the power of the Legislature to grant such franchise to certain corporations.

Counsel cites South Texas Telephone Co. v. Pearl Tabb, 52 Tex. Civ. App. 213, 114 S. W. 448, which we have read with interest; and if it be said that that case is applicable here we decline to follow it, but that case is so different in its facts from the one at bar that we do not deem it necessary to refer to it further.

We are of opinion that chapter 291, Laws of 1922, section 1508, Code of 1930, has no application to the case here; but if it had, this record does not disclose that the board of supervisors and the power company had not lawfully discharged their duties with respect thereto, and under well-known rules we would assume that the law had been complied with, and the board of supervisors had designated and regulated the poles and the manner of erecting these poles and wires, and this presumption is strengthened by the fact that the pole complained of was placed on the right of way eight feet from the traveled portion of the road and at a point where it would least interfere with the county in maintaining the roads for the traveling public using same, this cannot be gainsaid in this case. The presumption, however, is that persons have acted lawfully and not unlawfully.

We are of opinion that the appellee cannot recover from the appellant here; and if, as stated in the briefs, Parker is insolvent and a minor and cannot be coerced into paying the judgment, it is a misfortune which cannot be charged against this appellant here; but it is certain that no recovery can be had as against the power company.

Let it be understood that we have not dealt with a case where poles have been erected in the traveled or used portion of a highway that might be dangerous or interfere with the common use of the public highway.

Reversed, and judgment here for the appellant.