# Burch *v.* Southern Bell Telephone & Telegraph Co. *et al.*

(Division B.   March 29, 1937.)

[173 So. 300.   No. 32638.]

408

**Green, Green & Jackson,** of Jackson, and **F. D. Hewitt,** of McComb, for appellant.

Hugh V. Wall, of Brookhaven, for appellees, Lincoln County Lumber Company, J. F. Vernon and Mrs. J. F. Vernon.

**Butler & Snow,** of Jackson, for appellee, Southern Bell Telephone Company.

Argued orally by **Forrest B. Jackson**, for appellant, and by **George Butler**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The defendants in the circuit court were Mrs. J. F. Vernon, the owner and operator of the Oak Hill Dairy Farm, located about five or six miles east of Brookhaven; the Lincoln Lumber Company, a domestic corporation, and the Southern Bell Telephone & Telegraph Company, which operated telephone exchanges and maintained lines for that purpose in that county. The latter company owned and maintained a telephone line from Brookhaven to Cameron's Store, about four miles east of Brookhaven. At Cameron's Store the telephone company had made the necessary arrangements and furnished the necessary service for connection with and the accommodation of rural or farmer's telephone lines, to be constructed from said store in various directions into the surrounding rural community. These rural or farmer's lines were constructed, owned, and maintained by the farmers themselves, and the telephone company had no contractual obligation in respect to them other than to make the

proper connections at Cameron's Store and in its exchange in Brookhaven for the transmission of messages from or to these privately owned rural lines.

Among those owning and maintaining a rural line from Cameron's Store was the said Oak Hill Dairy Farm. In the business of the farm two telephones were used, one in the main residence and the other in the office, a short distance from the residence. The wire which connected the residence and the office crossed a driveway within the private inclosure of the dairy farm. Within this inclosure was a large storage house, suitable for the reception and storage of hay. The lumber company operated a commissary and, among other things, it handled baled hay in large quantities. At the time of the injury complained of, the lumber company had received a shipment of baled hay and had arranged with the dairy farm to store this hay in the above-mentioned farm storage house. This arrangement appears to have been one of long standing, or at least for a year. On the day in question appellant, an employee of the lumber company, in conjunction with another employee of the same company, was engaged in transporting baled hay from the railroad cars in Brookhaven to this dairy farm storage house.

A large motortruck was used for the stated purpose, and the usual practice pursued by the two employees aforementioned was to place on the truck 40 to 50 bales of hay, and when thus loaded they would fasten the hay to the truck by the use of a rope which, according to the undisputed testimony, had always, until the particular trip in question, been found sufficient to hold the hay in position and to allow the two employees to ride in the cab of the truck while on the way to the farm. But on this particular occasion the bales seemed to be, or become, insecure and in danger of falling from the truck, whereupon appellant's coemployee directed appellant to get on the top of the load and to ride there so as to pre-

vent any of the bales from becoming dislodged. Appellant complied with this direction, and while riding on top of the load, the truck entered the private inclosure of the dairy farm, and as the truck passed between the residence and the office, the telephone wire between those two points caught appellant under his arm, and he was thereby thrown from the loaded truck and seriously injured. An action was brought by him against the defendants aforesaid, upon the allegation that they were joint tort-feasors and liable to him in damages for the injuries. At the trial, the circuit judge directed a verdict in favor of all the defendants and dismissed the action; and upon a careful review of the facts and the applicable rules of law, we think the course taken by the court was correct.

The lumber company is not liable for several reasons; but it is sufficient in this connection to cite the case, Gulfport & Mississippi Coast Traction Co. v. Faulk, 118 Miss. 849, 80 So. 340. See, also, Buckley v. United Gas Public Service Co. (Miss.), 168 So. 462.

The telephone company is not liable because it did not construct nor own the telephone line here in question nor any of the equipment east of Cameron's store; had no control or supervision over it, and had made no contract, express or implied, to inspect or maintain it. Any attempt by the telephone company to interfere would have been an assumption. Since, then, the telephone company did not erect this particular line and had no authority or control over the wire in question, it could have no liability in respect to its physical condition or situation. Before a party can be held liable for a given condition or situation, that party must have the power and authority to remedy it, for it is no less than a truism that a party has no duty to do a thing which he is without lawful power or authority to do, and that there is no liability where there has been no breach of legal duty.

The only serious question is as to the liability of Mrs.

Vernon, the owner of the premises, and who maintained the wire which caused the injury. The highest degree of care is required of transmission lines charged or likely to be charged with a dangerous voltage of electricity, but the degree of care imposed upon ordinary telephone lines, which carry no such current, is reasonable care. The rule is also that the degree of care in order to be regarded as reasonable, in respect to such lines, must be proportionate to the danger that may be reasonably apprehended at the particular location. 62 C. J. 60, 61. Thus, greater care is required where the telephone wires are over a principal street or an important highway used for a wide variety of transportation, as compared with a highway in some sparsely settled district in the country. Id., p. 60. And upon similar reasoning, still less a degree of care is required where the wire is over a driveway within a private inclosure, not a public highway at all, and where vehicles with more than the usual height or load—as compared with vehicles in general use and general average of load—are reasonably expected to proceed with care and with some circumspection as to the arrangements within such private inclosure.

Telephone and telegraph lines crossing a highway must be high enough for the usual and ordinary travel in that area, including the usual and ordinary commercial uses of the highway, but they are not required on pain of liability to be high enough for extraordinary travel, as to which the traveler must keep a lookout. 62 C. J., p. 59. This rule is recognized by our statute, section 7061, Code 1930, which uses the language that such wires may be carried across public highways in such manner as not to "interfere with the common use of such roads," etc. But the roadway here in question was not a public thoroughfare but was a private way, and the owner of the premises was not required to anticipate and provide for that full extent of height required of a general public highway. But if she were, there is no testimony in this

record showing the height to which the bales of hay were loaded on this truck. It has already been mentioned that there were 40 or 50 bales on the truck, but how high this made the load no witness says; and no witness undertakes to say that the height was or was not unusual as compared to the general or even the reasonably exceptionable experiences in such heights of loads in that part of the country. It may have been, so far as the evidence shows, that the height exceeded that of the usual and ordinary travel even for commercial purposes; and besides this, there was the plaintiff sitting on top of this load which he himself says had never happened before. Was the owner of the private premises required to anticipate and provide against unusual heights of loads and in addition to this that a person would be sitting or standing on top of such a load? We think the rule could not reasonably and justly so require of her, and that she is not liable here.

Affirmed.