WESTERN UNION TELEGRAPH CO. *v.* PERRY.

(In Banc.  Oct. 28, 1946.  Suggestion of Error Overruled Nov. 25, 1946.)

[27 So. (2d) 688.  No. 36189.]

**Wallace, Greaves & Wallace,** of Gulfport, and **Francis R. Stark,** of New York, N. Y., for appellant.

470

**Luther Maples** and **Edwin S. Leland,** both of Gulfport, for appellee.

Argued orally by **R. A. Wallace**, for appellant, and by **Luther Maples** and **Edwin S. Leland**, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

Mrs. Bertha Perry, appellee, sued the Western Union Telegraph Company, appellant, seeking damages because of the collision of her automobile with one of appellant's telegraph poles in Mississippi City, an unincorporated village in Harrison County. She was driving the car. On her recovery of damages, the Telegraph Company appeals.

Several errors are assigned, but it is necessary for us to discuss only whether or not the trial court erred in refusing to instruct the jury peremptorily to find for the appellant at the end of all the testimony, and in overruling appellant's motion for a new trial on account of said refusal.

Mrs. Perry was forty-nine years of age at the time, had been born and reared in Mississippi City, where she had lived all her life. Her residence was two blocks from the depot on the north side of the railroad, not far from the scene of the accident. At nine o'clock at night she was driving west toward her home on Railroad Street, which is south of and parallels the railroad at a point where Dolan Avenue joins Railroad Street and stops. Nearby,

not on the highway but on its own right of way, stood the pole against which Mrs. Perry drove her car that night. The right of way for Railroad Street, which was dedicated in 1906 to public use, was thirty feet wide but was paved for only eighteen feet of its width. This pavement was a little under two feet short of the northern line of the right of way, which was almost a foot from where the telegraph pole stood. Ten feet of the highway, south of the paved part of Railroad Street, is unpaved. There was a graveled parkway used by vehicles in connection with the patronage of the railroad north of the pole, with a narrow space between the highway and this graveled section in which was a growth of grass. Mrs. Perry, according to her testimony, was driving between ten and fifteen miles an hour, and as she approached the telegraph pole she was blinded by the lights of two automobiles parked near the depot, towards which she was driving, which were in front of her and to the west. She says that she was blinded. In that situation she deliberately drove off the highway, and as a consequence ran into this pole. She says her purpose was to avoid the cars, which she thought were approaching, but which she later learned were parked.

The Postal Telegraph Company had established its telegraph lines along its right of way in 1893, and a pole was then erected there and one had stood there ever since—long prior to the highway. The Postal Telegraph Company and the Western Union Telegraph Company merged under the name of the latter, and continued to maintain the pole at this spot. Mrs. Perry used the road habitually, and coming up Dolan Avenue she would be bound to see this pole at its head, and while driving along Railroad Street she certainly must have become familiar with the location of the pole. Undoubtedly she was, and should have been, living nearby and having spent forty-nine years in Mississippi City. She said that the only thing that prevented her seeing the pole that night was that she was blinded by the lights of the automobiles in

front of her, something less than two hundred feet away. As stated, in that situation, she deliberately elected to turn off the paved road, and so ran into this pole. She was injured and spent several days in bed, was treated by a doctor, her car damaged and repaired. She said that the front end of her car was pinned around the pole, and that she was driving only ten or fifteen miles an hour in a 1932 or 1934 car. She also stated that she was of the opinion that the pole was put there before the road was built, and this is borne out by other witnesses. The pole was not on the right of way but was outside of the paved road, and if appellee had continued going, undoubtedly she would not have collided with the pole. But, blinded as she was, she chose to drive off the highway and take her chances, with the direct result that she smashed into the pole. Evidence was admitted that not since 1918 had any other collision been had by anyone with this pole, the action involved here being the first to have occurred in the recollection of the witnesses. So, it was not a menace to ordinary travel on the paved road.

The decision in the case depends upon whether or not the location of the pole was improper and was the proximate cause of the injury to appellant. Section 7837, Code 1942, provides that telegraph companies may set up and erect posts and fixtures along and across public highways, streets, or waters; "but the same shall be so constructed and placed as not to be dangerous to persons or property." The above section was Section 7061, Code 1930. Section 1506, Code 1930, was the basis of decision in Mississippi Power Co. v. Sellers, 160 Miss. 512, 133 So. 594. The pole of the appellant there was not within the used portion of the road. It was not within that part of the right of way which one would expect to travel, although witnesses did testify that a truck could be driven across a depression along the outer edge of the right of way; but it was clearly and overwhelmingly established that the county prepared and signified to the public that it should use a twenty-four foot road. The pole was not

within the space which the county had prepared for the common use of travellers and which it had in a manner invited the traveling public to use. The pole was within a few feet of the east line of the right of way. The plaintiff in that case was shown to have driven recklessly, but recovered a verdict in the lower court, which was reversed and judgment rendered here for appellant. In the instant case, the telegraph company's pole was not within the right of way at all—was certainly beyond the paved part of Railroad Street, where the authorities had clearly prepared and signified to the public it should travel. The fact that people could and did use the gravel parkway along the side of the railroad and beyond the pole and the immediate area grown up with grass, did not make such space a part of the right of way or of the paved highway. Appellee was familiar with this location, was familiar with the environs, living nearby, was forty-nine years of age, and had been for that length of time a resident of this unincorporated village. She says she was blinded by the car lights ahead of her, which alone prevented her seeing this pole. Yet at this junction of Dolan Avenue and Railroad Street where a pole had stood since 1893, she deliberately elected to drive off the highway in that condition, completely unable to see where she was driving, because of the parked automobiles with their glaring headlights shining in her eyes. We think that there is a striking similarity between the two cases.

In Gulfport & Mississippi Coast Traction Co. et al. v. Manuel et al., 123 Miss. 266, 85 So. 308, this Court, in substance, said a municipality may set apart a portion of its streets between the travelway for vehicles and the sidewalk for the erection of poles for electric light wires, telegraph wires, or trolley wires, and for similar purposes. It need not give the whole street to drivers of vehicles. The driver of a vehicle in this case was reckless, sued and recovered damages because of collision with the pole, but on appeal here it was reversed and judgment rendered for the appellant. The traveled part of the street

there was eighteen feet wide, as here, and the pole three and one-half feet from its edges.

Sction 7838, Code 1942, confides in the board of supervisors and the municipal authorities the power to regulate the manner of construction and maintenance of telegraph and telephone lines, "with a view to the safe and convenient use of the public highways and streets; and if the proprietors of any telegraph or telephone line refuse or omit to comply with such regulations, the board of supervisors, or the authorities of the city, town or village, may cause such line to be abated within its jurisdiction as a nuisance." As stated supra, this line was established here in 1893, long before the road was built. The highway involved was laid out near to the pole and the pole not placed near to the road. No action had been taken by any authorities to abate it as a nuisance, and no previous accident had occurred because of it. If such pole were a nuisance and its abatement sought, the Telegraph Company would have to be compensated, because the pole was established and maintained by the company where they had a right to establish and maintain it.

In Hemphill v. Mississippi Power Co., 5 Cir., 84 F. (2d) 971, where the events occurred in Mississippi, the Court decided that the location of pole carrying the electric transmission line 2½ feet from edge of 16-foot black top surface of road 24 feet in width, 200 feet from bridge over small ravine near oval curve in road, was not negligence which would render Power Company liable for motorist's injuries received when automobile struck pole. And further that in motorist's action against the Power Company for injuries received when automobile struck pole carrying transmission lines located 2½ feet from the edge of 16-foot black top surface of road 24 feet in width when motorist was blinded by flash of light after rounding the curve and crossing bridge 200 feet from pole at speed 25 or 30 miles per hour on dark rainy night,

question of Power Company's negligence was insufficient for jury.

Appellee argues that the case here is controlled by Terry et al. v. Smylie, 161 Miss. 31, 133 So. 662, to the effect that a driver of automobile blinded by lights must bring the car within stopping speed. In the case at bar, while not driving at a rapid rate of speed, she does not seem to have slowed down. Instead, she intentionally drove off the paved road, and beyond its right of way. The Terry case, supra, was also cited by appellant, on the theory that appellee was reckless and continued to go ahead, as she did, in the face of these glaring lights, which blinded her at the time. Appellee argues correctly that Burch v. Southern Bell Tel. & Tel. Co. et al., 178 Miss. 407, 173 So. 300, declared that telegraph lines must be maintained reasonably in proportion to danger that may be reasonably apprehended at particular location. Bearing upon this point, it must be borne in mind that since the recollection of the witnesses who testified, beginning in 1918, no complaint of any other collision with this pole had ever been made by any one.

It seems to us to be manifest that this pole was not the proximate cause of this accident, and consequently of the damages to the appellee. If the cars with their dazzling headlights had not been parked at the depot and the glaring lights had not blinded her, it would not have occurred. If, while blinded by the glaring lights, she had elected to continue to drive on the paved highway provided by the authorities for driving, even though blinded by the lights, she would not have collided with this telegraph pole, located outside of the right of way, where it had stood, or one like it, since 1893, and with which situation the appellee was familiar. We, therefore, conclude that the motion of appellant for a peremptory instruction at the end of all the testimony should have been granted, and its refusal was error. The court erred in overruling appellant's motion for a new trial on this ground.

It is not necessary to discuss the other points argued in the briefs, as our conclusion above disposes of the case. The judgment of the lower court is reversed and judgment rendered here for appellant.

Reversed and judgment rendered here for appellant.

**Sydney Smith, C. J.,** did not participate in this decision.