UNITED GAS CORPORATION *v.* PARKER

No. 43494          April 26, 1965          174 So. 2d 370

*Welch, Gibbes & Graves, William S. Mullins, III,* Laurel, for appellant.

*Melvin, Melvin* & *Melvin,* Laurel, for appellee.

490

ETHRIDGE, J.

This is a tort action brought in the Circuit Court of Jones County, Second Judicial District, by appellee, Mrs. Mattie Lee Parker, against appellant, United Gas Corporation. The jury awarded her damages of $10,000, and from a judgment based on that verdict United has appealed. The questions are whether United, in digging a trench for its pipeline near the traveled portion of the highway, was guilty of negligence which proximately contributed to plaintiff's injuries, and if so, whether the verdict is grossly excessive. We affirm the judgment of the trial court.

In reviewing the jury's verdict, we accept as true those facts favorable to appellee and reasonable inferences from them. On this basis, the jury was justified in finding as follows: The old Heidelberg and Sandersville highway in Jones County was formerly, until the late 1930's, old Highway 11. At the point in question it ran north and south and, although it had some gravel on it, it was mostly a dirt road, which after a heavy rain turned into a mud road, with puddles of water distributed over it. On each side were drainage ditches, which, prior to the installation of United's gas line, sloped off gradually and were 18 to 24 inches in depth.

In January 1961 United, with permission of the beat supervisor, used a ditch digging machine, and excavated

on the east side of the highway a ditch approximately 2½ feet wide and 5 feet deep, near the bottom of which United placed a 3-inch gas pipeline. It then put 32 inches of dirt over the pipe. Defendant inspected the ditch several times, but the last inspection was made three months after it was dug. United made no later inspection, and had made none for over two years before Mrs. Parker was injured on July 31, 1963.

The walls of the ditch on the east side of the highway were left uncovered, unguarded, and unmarked. The ditch was about 2½ feet in width, with vertical walls 5 feet in depth. If United placed fill-dirt on its pipeline in 1961 after it was laid, this dirt had long since been washed away. The pipeline had no dirt on it. Moreover, vines and weeds had grown up around the ditch, so that it was not noticeable to the general public traveling the highway.

Mrs. Parker lived with her husband and two children on this highway two miles north of the place of the accident. Her three-year-old daughter was injured in a fall, and on the afternoon of July 31, 1963 she drove south on this road to take the child to a doctor in Laurel. It had been raining quite heavily for some time before, but the rain had ceased. The road was wet and muddy, with very little if any gravel on it. It had big holes full of water. Appellee was driving 25-30 miles per hour, and had to pick her way to avoid numerous mud puddles. At that time there were no ruts. While driving and trying to miss the water puddles, since she did not know how deep they were, Mrs. Parker drove around a large one located on the west side of the road. She got close to the edge of the lefthand or east side. When she began to turn back to the center, the ditch of United sloughed or caved off for several inches on the surface, and the left wheels of her car slid into it.

The edge of the road next to the ditch caved in. Mrs. Parker did not know it was there, because it was sur-

rounded by honeysuckle vines and various kinds of weeds. She did not drive in the ditch, but driving close to it, the walls caved in. The ditch was in the edge of the traveled portion of the highway. She did not lose control of her car, and it did not skid or slide. The large mud or water hole which appellee was trying to avoid at the time began near the center of the road and extended to the right-hand side. She had to go to the left to stay out of it. As another witness said, when there was rain one had ''to drive all over the road to stay in the road.''

■■■ Mississippi Code Annotated section 2780 (1956) authorizes pipeline companies to build and construct pipelines along or across highways above and below ground, ''but not in a manner to be dangerous to persons or property, nor to interfere with the common use of such roads.'' Obstructions in a highway may be authorized, but such authority is strictly construed, and cannot be exercised by a pipeline company in such a manner as to constitute a source of danger to the public. The statute prescribes this rule.

■■■ Accordingly, a wide and deep ditch with vertical banks, such as that constructed by United, may be found to be in such close proximity to the highway as to constitute an obstruction dangerous to anyone properly using the highway. Such a ditch, in close proximity to the road, even though outside of the traveled part, may constitute construction in a dangerous manner. The defendant is not relieved of liability for resulting injuries because the obstruction is outside the traveled way.

These rules and doctrines were discussed and applied in United Gas Pipeline Company v. Jones, 236 Miss. 471, 111 So. 2d 240 (1951). A verdict for a passenger in an automobile was affirmed, where the car, rounding a curve in the highway, collided with a concrete post 2½ feet high, erected by the pipeline company at the

outer edge of the highway shoulder about 3½ feet from the edge of the pavement. There were jury questions on the issues of whether the pipeline company was negligent in placing the post on the highway right of way in a manner to be dangerous to persons using the highway, or to interfere with the common use of the road, and whether such negligence was a proximate contributing cause of the injuries.

██ █ *Jones* is applicable to the instant case. The jury was justified in finding that an ordinarily prudent man would have reasonably anticipated that some injury, not necessarily the particular injury, would result from the digging by United of the deep ditch with vertical sides on the edge of the highway. ██ █ Further, United's failure to inspect the condition of this ditch and its pipeline in this location, and the growth of weeds and grass concealing it, could also constitute negligence proximately contributing to plaintiff's injuries.

██ █ There may be more than one proximate cause of an injury. If the defendant's negligence proximately contributed to it, then it is liable, even though it was not the sole proximate cause of the injury. Planter's Wholesale Grocery v. Kincaide, 210 Miss. 712, 50 So. 2d 578 (1951). The jury manifestly rejected appellant's contention that the appellee's injuries were the sole result of her own negligence, and that the failure on the county's part to adequately maintain the road was an independent intervening cause.

We do not think the four cases relied on by appellant are applicable or controlling here. Vines v. Southwestern Miss. Elec. Power Ass'n, 241 Miss. 120, 129 So. 2d 396 (1961); Western Union v. Perry, 200 Miss. 469, 27 So. 2d 688 (1946); Mississippi Power Co. v. Sellers, 160 Miss. 512, 133 So. 594 (1931); Gulfport & Miss. Coast Traction Co. v. Manuel, 123 Miss. 266, 85 So. 308 (1920). As was said in *Jones,* "those cases involved injuries resulting from collisions with the poles of elec-

tric power companies which could be readily seen from a distance by motorists approaching from either direction along the highway.'' 111 So. ·2d at 251. Moreover, the depth and width of this ditch, its proximity to the traveled portion of the road, the poor condition of this dirt road, and the growth of grass and weeds over the ditch are facts which place the instant case in a different category from those cited.

There were no errors in the instructions granted appellee which would change the results of this case. When all of them are read together, the jury was fairly directed on the law.

██ ██ The remaining question is the amount of damages. The verdict was generous, but we cannot say on this record that it is so grossly excessive as to evince bias, passion and prejudice by the jury, or be shocking to the conscience. When the bank of the ditch caved off, the car stopped immediately, because its left wheels fell in the ditch. The impact knocked Mrs. Parker against the steering wheel, the panels and the door of the car. Her head, shoulders and back were hurting considerably. She was stunned temporarily, but after about twenty minutes she managed to get out of the car with the child and walk up the road for help. The doctor did not examine her when she took the child to the clinic later that afternoon, but that night she began having pain over her body. She found she was bruised in many places. When she went to the doctor the next day, he prescribed sedatives for the pain. In September 1963 she went to Dr. Bass, an orthopedist, who prescribed a Thomas collar. She wore it on her neck continuously, except when sleeping. When the collar was removed, the pain became considerably worse. The case was tried approximately eight months after the injury, and Mrs. Parker testified that she had almost continuous pain in her shoulders and back. Before the accident she did not have any such difficulties. She tried to get

along without the Thomas collar, but found she could not. She was still taking sedatives at regular intervals. She was a housewife, and since the injury had not been able to do anything but "very light housework . . . and cooking."

Dr. Bass said he found that Mrs. Parker had a cervical sprain to the ligaments of the neck. She also had a congenital nonunion of the odontoid process, which made the area more prone to neck injuries. The ligaments were stretched, and eventually the gap would be filled in with scar tissue, between the fibers of the ligaments. He said Mrs. Parker had not reached a maximum recovery. The filling of scar tissue is a slow process. Some patients can adapt with no residual involvement, others cannot. The latter have a permanent limitation of motion, but he did not know at the time he testified into which category Mrs. Parker would fall. He was satisfied that she had pain and true muscle spasms.

The damaged ligaments in her neck aggravated her congenital defect, and made it more prone to cause pain. They will probably make it harder for her to recover. Appellee had a permanent scarring, and she probably would continue to have pain with extremes of motion in her neck and changes in weather. Within a year she probably will reach the maximum recovery. Bass prescribed a Thomas collar and relaxing drugs for the pain in her neck and muscle spasms. Although he could not predict what her maximum recovery would be, Bass thought that probably she would continue to have pain on extremes of motion in her neck, as the result of the accident.

Unquestionably Mrs. Parker has had a considerable amount of pain and suffering from the accident. Her medical bills were $182 to the time of trial. The jury was justified in concluding there would be future, additional medical expenses. On the basis of Dr. Bass's testimony, the jury could also find that appellee suf-

fered a cervical sprain to her neck which permanently aggravated her existing condition, and that probably she would continue to have pain in that area for the balance of her life. Under all of these circumstances, we cannot say that the verdict is grossly excessive.

Affirmed.

*Lee, C. J., and Gillespie, Brady and Inzer, JJ.,* concur.