249 So.2d 403 (1971)
PARGAS OF TAYLORSVILLE, INC., a Mississippi Corporation,
v.
Shelia Diane CRAFT, a Minor, by G.C. Craft, Father & Next Friend.
No. 46227.
Supreme Court of Mississippi.
May 3, 1971.
Rehearing Denied June 28, 1971.
*404 Wilbourn, Williams & Glover, Meridian, Eugene G. Tullos, Raleigh, for appellant.
Bowling, Coleman & Cothren, Jackson, Luther David Pittman, Crymes Pittman, Raleigh, for appellee.
BRADY, Justice:
This is an appeal from the Circuit Court of Smith County, Mississippi, wherein a judgment in the sum of $100,000 was entered against J.D. Lyles and Pargas of Taylorsville as co-defendants. From that judgment one of the defendants, Paragas of Taylorsville, appeals.
On August 8, 1969, between 8:00 and 9:00 p.m., the appellee and her sister were riding in the rear of a pickup truck which was being operated by their father, G.C. Craft, over State Highway No. 28. The co-defendant, J.D. Lyles, was also operating a vehicle, a 1966 Dodge, on the same highway and was traveling in the same direction as the Craft vehicle. Lyles admitted he was traveling forty to forty-five miles per hour in a speed zone of thirty-five miles per hour and that he had no brakes on his automobile.
As Mr. Craft, after signalling, was in the process of turning his pickup truck to the right from paved Highway No. 28 onto a gravel road, which is Old Highway No. 28, on which his mother's home is located, the rear of the truck was struck by the right front of Lyles' automobile. Lyles tried to turn left and avoid striking the Craft pickup He testified, "I give it some gas," but oncoming traffic kept him from turning and his car struck the pickup, evidently locking the bumpers. The speed of Lyles' car and the great force of the collision prevented Craft from controlling his truck, and propelled or shoved the Craft vehicle into the liquid petroleum gas storage facility owned by the appellant. The pickup truck was shoved into and demolished a small metal building which housed the pumping facilities of the liquid petroleum gas storage facility. So great was the impact that the truck sheared the three-quarter inch bolts which held the pump in place and broke a two inch pipe leading to the storage tanks which contained liquid propane gas.
The pictures clearly reveal that the pickup truck crashed through and went over the twelve gauge manproof wire fence joined to the north side of the metal pump house. A tremendous gas fire instantly erupted at the facility of the appellant. This bulk plant was and has been located on private property for twelve years. The location of the plant and its distance from Highway No. 28 was known, approved and accepted by the Liquid Petroleum Gas Safety Division of the Motor Vehicle Comptroller's Office as being a safe distance from the highway and having met the Division's safety requirements for such a facility.
It is undisputed that the pump and the fifty feet of connecting pipes contained two and eight gallons of liquid propane gas, respectively. It was further shown by testimony, though conflicting, that the valve on the pipe leading from the bottom of the 6,000 gallon tank, which was in the middle of three tanks in the facility, was open and that this tank contained approximately six hundred gallons of liquid propane when checked shortly before the collision.
Mr. and Mrs. Craft, after the pickup struck the pump, immediately "stumbled away" from the truck, which was enveloped in flames. After extricating themselves, they had to "wade back into" the fire and managed to remove their two daughters before their clothing caught fire. *405 The appellee, a minor child, by her father and next friend, instituted suit against the two co-defendants for the first, second and third degree burns which she suffered. A demurrer was filed to appellee's declaration which was presented and overruled.
The cause proceeded to trial and at the conclusion of all the evidence, the trial court overruled the appellant's request for a directed verdict and submitted the case to the jury on the grounds that the appellant, Pargas, could be found to have been guilty of contributory negligence in failing to have a fence five feet away from and around the pump, and in failing to have all of the valves on the tanks closed. Under proper instructions these two issues were submitted to the jury which returned a verdict in favor of the appellee for $100,000. From a judgment for that amount, this appeal is taken.
Regulations 3.4 and 3.7 of Division III of the Liquefied Petroleum Gas Safety Rules and Regulations of the Motor Vehicle Comptroller, as empowered by Mississippi Code 1942 Annotated section 5104 (1956), provide, among other requirements, as follows:
"DIVISION III  BULK STORAGE PLANTS
* * * * * *
"3.4 Container Valves and Accessories
* * * * * *
"(b) Connections to containers, except safety relief connections, liquid level gauging devices and plugged openings, shall have shutoff valves located as close to the container as possible and never more than one foot from excess flow valve.
* * * * * *
"(f) The manual shutoff valve located next to the excess flow valve on storage containers' outlets shall be closed except during filling and unloading operation.
* * * * * *
"3.7 Fencing
"(a) LP-Gas Dealers bulk storage area which includes containers, pumping equipment, loading and unloading facilities shall be enclosed with a 5-foot high man proof fence. Fence material shall be woven wire or equivalent, not less than No. 12 gauge wire thickness. The fence shall be installed no closer than 5 feet to the container at any point. Fence posts, or supports, shall be iron, steel, or concrete of substantial construction and set in concrete. There shall be at least two means of emergency access. These access gates shall be locked when not in use."
It is undisputed in the record that the pump was enclosed in a metal house which Mr. J.B. Williams, Inspector of the Liquid Petroleum Gas Division, stated was attached to the fence which circumscribed the three tanks. From the diagrams offered in evidence it is apparent that the fence was attached to the southeast corner and approximately in the middle of the north side of the metal pump house. The metal pump house was padlocked from the outside and also contained a gate which permitted access to the liquid petroleum pump, pipes and tanks. The evidence also clearly establishes the fact that even if all the valves had been closed as required by the rules and regulations of the Liquid Petroleum Gas Safety Division of the Motor Vehicle Comptroller's Office, ten gallons of liquid propane gas would still be present in the approximately fifty feet of two inch piping and the pump and that it would have escaped instantaneously when the pump was sheared off and the two inch pipe was broken. It is undisputed that the pressure of two hundred and fifty pounds in the pump and in the fifty feet of piping was the same as that in the tanks and remaining pipes so long as the propane gas was in a liquid state.
*406 The undisputed proof further shows that this liquid propane will expand two hundred and seventy times as it is changed into a vapor and burned and that this quantity of liquid propane in itself in these types of containers will burn for approximately thirty minutes, as testified to by Dr. William McCain, Jr., Head of the Petroleum Engineering Department of Mississippi State University.
The record further reflects that the appellee did not present any direct evidence to show that she would not have been injured as she was if all the valves had been closed at the time of the collision.
The appellant in his brief assigns five errors. It is necessary for us to consider only the first and the fifth errors urged by the appellant, which are:
1. The trial court should have directed a verdict for the appellant.
5. The verdict of the jury was contrary to the overwhelming weight of the evidence.
These errors will be treated jointly as was done by the appellant and appellee in their respective briefs. At the outset it can be conceded that the failure of the appellant to construct the "man proof" fence "no closer than 5 feet" to the pumping equipment together with the failure to close the shutoff valve of the six thousand gallon tank constitutes negligence on the part of the appellant in that it is a violation of the rules and regulations of the Liquid Petroleum Gas Safety Division of the Motor Vehicle Comptroller's Office promulgated under the authority of Mississippi Code 1942 Annotated section 5104 (1956). As is true in the case of danger, so negligence of itself is not sufficient to permit a recovery because of injuries sustained by another. The injury must have been caused by the negligence complained of.
In Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 497, 186 So. 625, 627 (1939), this Court stated:
It is not enough that negligence of one person and injury to another coexisted, but the injury must have been caused by the negligence.
In Tombigbee Electric Power Association v. Gandy, 216 Miss. 444, 452, 62 So.2d 567, 569 (1953), the defendant created a dangerous situation and this Court pointed out that danger alone is not negligence and "even where negligence is shown that fact alone affords no basis for the recovery of damages unless it further appears from direct evidence or reasonable inference that such negligence proximately contributed to the damage."
The following cases have application to the case at bar: Fate Robison, Jr. v. Joseph Forest McDowell, Jr., Miss., 247 So.2d 686, decided April 5, 1971; Hoke v. W.L. Holcomb & Associates, Inc., 186 So.2d 474 (Miss. 1966); Permenter v. Milner Chevrolet Company, 229 Miss. 385, 91 So.2d 243 (1956); Mississippi City Lines v. Bullock, 194 Miss. 630, 13 So.2d 34 (1943).
In all four of the above noted cases the plaintiffs were injured and the defendants were guilty of some negligence, but this Court ruled nevertheless that the defendants were not liable because the defendants' negligence was not a proximate cause of the injuries. These cases the appellee contends have no application, with which contention we are not in accord. The appellee urges that the ruling in Mississippi Power and Light Company v. Thomas, 206 Miss. 201, 39 So.2d 759, 40 So.2d 597 (1949), is controlling in the case at bar and also cites the cases of Nobles v. Unruh, 198 So.2d 245 (Miss. 1967); United Gas Corporation v. Parker, 252 Miss. 486, 174 So.2d 370 (1965); United Gas Pipe Line Company v. Jones, 236 Miss. 471, 111 So.2d 240 (1959); Brewer v. Town of Lucedale, 189 Miss. 374, 198 So. 42 (1940).
*407 The Jones, Parker, Town of Lucedale and Unruh cases relied on by the appellee are distinguishable from the case at bar. In each of the first three cases obstructions in the street or public highway precipitated or caused the injuries. The fourth case involves violation of traffic law in the highway. In the case at bar the liquid petroleum storage facility was located seventy feet from the pavement and on private property, thirty-eight feet outside the highway right-of-way. While the declaration advances the contention that the proximity of the appellant's liquid gas plant to the paved and old gravel Highways No. 28 constituted negligence, the appellee failed to offer any evidence in support of this assertion. The record fails to disclose that any prior motor vehicle collision had occurred at the location of appellant's plant between new and old Highways No. 28 since the plant's construction in 1956. To the contrary, appellee prevented, by objections which were sustained, the appellant from showing this to be a fact.
Mississippi Power and Light Company v. Thomas, supra, is clearly distinguishable from the case at bar. In that case the negligence of the appellant consisted in failing to install two pipes in a coupling. The pipes pulled apart and the plaintiff was injured by gas escaping from the coupling. In the case at bar the causa causans of the gas escaping was solely because Lyles' car propelled appellee's truck into the pump, shearing it from its concrete base and breaking the two inch pipeline. Thus instantly the liquid propane, consisting of ten gallons, situated in the pump and two inch pipe was spontaneously transformed into a torrent of flaming gas. Regardless of the fence or the open cutoff valve to the tank containing six hundred gallons of propane liquid gas, the accident and the injuries would have occurred. The appellee's proof fails to contradict this inexorable fact. Stated otherwise and positively, the appellee failed to prove that except for the appellant's negligent construction of the fence and the open valve the accident would not have occurred and the injuries received. This classifies appellant's negligence as remote, passive and benign as compared to the present, active and malignant negligence of defendant Lyles.
Inspector Pritchard testified if all valves had been closed, when the pipe was broken the gas which was trapped in the pipe and pump would escape. Dr. McCain testified, which testimony is absolutely undisputed, that even with all valves closed the liquid in the pipe would be under the same pressure as the liquid in the tank and, even with all the valves closed when a pipe is broken the "initial spurt," appellee's phrase, would last from one to two minutes and one-third of the liquid in the pump and pipe would escape during that time. This must be construed to mean that three and one-third gallons of liquid gas would escape within one or two minutes from the time the pipe was broken. This liquid gas expanding two hundred and seventy times as it changes to a vapor and burns is equivalent to nine hundred gallons of vapor which would blaze in the first two minutes.
Since the appellee was removed from the fire during the "initial spurt" of gas and within a minute or two, it cannot be disputed logically that she would not have received the same burns regardless of whether the valve was open or closed, and regardless of the position of the fence.
In 38 Am.Jur. Negligence, section 54 (1941) the rule is clearly stated as follows: "A negligent act cannot be said to be the proximate cause of an accident unless the accident could have been avoided in the absence thereof." Furthermore, in 38 Am. Jur. Negligence, section 212 (1941) it is stated: "The defendant's negligence renders him liable only where it is the proximate cause of the injury."
As pointed out in Mississippi Power and Light Company v. Thomas, supra, a defendant is chargeable only with anticipating *408 reasonable probabilities. A person is not bound to anticipate the unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities. It is not reasonable to conclude that the appellant could or should have foreseen as a reasonable probability that a motor vehicle would be pushed seventy feet from the paved highway and crash into and demolish the pump house and fence of its storage facility. If this be so, then the owners of all service gasoline stations should foresee that it is reasonably probable that as a result of automobile accidents which occur on adjacent highways, the automobiles will likely collide with the gasoline pumps, making the owners of the pumps liable for all injuries sustained from such accidents.
In Hoke v. W.L. Holcomb & Associates, Inc., supra, Permenter v. Milner Chevrolet Company, supra, and Stewart v. Kroger Grocery Company, 198 Miss. 371, 21 So.2d 912 (1945), we find comparable facts and decisions which substantiate the contentions of the appellant in the case at bar. This Court since 1882, when justified by the facts, has consistently recognized the efficacy of the doctrine and has not hesitated to apply the rule of law of the independent, intervening cause. Where the independent, intervening cause is the sole proximate cause of the accident, the negligence, if any, of the first actor is remote and non-actionable. While it is unnecessary in deciding the issue of whether there was a sufficient independent, intervening cause to relieve the appellant from liability, we point out nevertheless that the gross negligence of Lyles led in an unbroken sequence to the injuries sustained by appellee. Permenter v. Milner Chevrolet Co., supra; Mississippi City Lines v. Bullock, supra.
It should be noted that just as it was pointed out in the Permenter case, supra, the starting of the car was not foreseeable because the defendant had a right to assume that everyone would obey the law, so here the appellant had a right to assume that when appellee signalled his turn to the right to go onto Old Highway No. 28 that Lyles would have his car under control, equipped with brakes that would hold, and would slow down until the appellee had made his turn, and not that Lyles would "give it some gas" and speed into the rear of appellee's car, lock bumpers, and push appellee's car seventy feet into the appellant's gas facilities. This could not have been foreseen by the appellant, and the appellee completely failed to establish that it could have. Furthermore, appellee's proof is insufficient to establish that either the failure to have a fence around the pump or the valve closed was a substantial factor in producing the injury.
Appellee must and does rely upon conjecture that had the fence been five feet from the facility appellee might not have been injured. The record lacks the facts to support this conjecture and just as conjecture is a fickle foundation upon which to rest a verdict, so verdicts, though worthy of great respect, cannot transform a possibility into a probability. Denman v. Denman, 242 Miss. 59, 134 So.2d 457 (1961).
This Court, speaking through the renowned, late Justice Virgil A. Griffith, in New Orleans and N.E. Railroad Company v. Burge, 191 Miss. 303, 2 So.2d 825 (1941), discusses the rules of law which control in this case. The alleged negligence in that case was the failure of the defendant railroad to blow the whistle or ring the bell in compliance with statutory requirements. Justice Griffith held:
It is not enough in any case merely that the defendant was negligent. The failure to ring the bell or blow the whistle does not of itself impose liability. If it did, then a man stone-deaf with nobody in sight of him could recover. The statute does not so attempt, even if it could constitutionally do so  however much upon a casual approach there may be a feeling to the contrary. In this, as in all cases, it is necessary to a cause of action on account *409 of the negligence that the latter shall have been the proximate, or a contributing, cause of injury to another; and in order that it shall be a proximate or contributing cause it must have been a substantial factor in producing the injury. And an actor's negligent conduct is not a substantial factor in bringing about harm to another if it would have been sustained even if the actor had not been guilty of the particular negligence charged. 2 Restatement, Torts, § 432. The foregoing statement is particularly applicable in those cases where the actor's negligence consists in the failure to take certain precautions which are required by law for the protection of another's person or chattels, of which the requirement to ring the bell or blow the whistle at public crossings is an example. In such a case, if the same harm, both in character and extent, would have been sustained even had the actor taken the required precautions, his failure to do so is not even a perceptible factor in bringing it about and cannot be a substantial factor in producing it. 2 Restatement, Torts, p. 1162.

* * * * * *
The problem becomes, then, one of the quantum of proof and the burden of proceeding therewith. And as in all other cases, possibilities and conjectures are excluded from the equation. It is not enough for the injured person, who has primarily the burden of the proof, to say that had the required precautions been taken by the opposite party, the injury might possibly have been avoided, or to propound a conjecture to the same effect. But when it has been established that the required precautions have not been taken and that there is more than a possibility that had they been taken the injury would not have occurred, the negligent actor must thereupon lucidly show, or the record as a whole must show, that under all the disclosed circumstances of the case, the required precautions would, in all reasonable likelihood, have been unavailing, or that the injury would, in all reasonable likelihood, have been sustained even had the negligent act not been done; and while this showing is not required in the sense or to the extent of disclosing it beyond doubt, nevertheless it must be done with fair and reasonable clarity, to be gathered from all the facts and circumstances of the case. 2 Restatement, Torts, p. 1163. Or to put it otherwise, if the evidence discloses that it was highly probable that the injury would still have occurred had there been no negligence on the part of the defendant, the latter's negligence is not to be allowed as a proximate or a contributing cause. 2 Restatement, Torts, p. 1164.
To say on the record in the present case that had the required signals been given the injury would not have occurred is to invoke a possibility or conjecture, and it is not within the legitimate province or power of a jury to convert a possibility into something more by the mere force of a verdict. Teche Lines, Inc., v. Bounds, 182 Miss. 638, 649, 179 So. 747. To thus convert, what, on the facts, is no more than a possibility into something more would be to allow an arbitrary exercise of power by an agency employed in government, and in that connection due process must be remembered as a primary constitutional mandate. * * * (Emphasis added.) 191 Miss. at 310-312, 2 So.2d at 826-827.
We are indeed sympathetic with the young appellee and regret her injuries and suffering. While sympathy is a worthy human attribute, nevertheless causes cannot be decided upon sympathy, but must be decided upon facts and on rules of law which have application thereto. This is so because sympathy has no standard measure, no uniform yardstick which can be evenly, fairly and justly applied by juries or courts in resolving human conflicts and rights.
It is the opinion of this Court from the overwhelming weight of the evidence and under the foregoing authorities that the appellee would have experienced the same injuries, both in character and extent, *410 which befell her even if the appellant had complied with the required regulations and precautions, and that appellant's failure to do so is not a proximate or contributing cause of the accident and resulting injuries.
For the foregoing reasons the judgment of the circuit court is reversed and judgment for the appellant is entered here.
Reversed and rendered.
ETHRIDGE, C.J., and RODGERS, SMITH and HARPER, JJ., concur.