## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00409-SCT

*BELMONT HOMES, INC.*

*v.*

*SARAH STEWART*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/20/2000 |
| TRIAL JUDGE: | HON. FRANK A. RUSSELL |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CLAUDE F. CLAYTON, JR. |
| | WILLIAM G. ARMISTEAD |
| ATTORNEYS FOR APPELLEE: | BARRY JOE WALKER |
| | DAVID O. BUTTS, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 08/09/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/30/2001 |

**BEFORE PITTMAN, C.J., MILLS AND COBB, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. On October 31, 1994, Sarah Stewart was involved in a one-vehicle accident on Highway 25 in Itawamba County. On May 12, 1995, she filed a complaint in the Circuit Court of Itawamba County against the Mississippi State Department of Transportation (MDOT) alleging that her accident was caused by MDOT's failure to maintain the highway in a safe condition. She amended her complaint twice more to ultimately name as defendants Belmont Homes, Inc., T & T Transport, Passmore Mobile Home Transport, RoadMasters Transport Co., G & J Transport, and Arkansas Transit. She claimed that these additional defendants created the rutted condition on the shoulder of the highway which allegedly caused her accident and resulting injuries. Prior to trial, all defendants except Belmont Homes, Passmore, and RoadMasters were dismissed from the action.

¶2. On January 20, 2000, the jury returned a verdict for Stewart in the amount of $500,000 against defendant Belmont Homes and found no liability as to Passmore and RoadMasters. The jury assessed comparative fault of 25 percent to Stewart and 25 percent to a "non-party." The court entered final judgment against Belmont Homes in the amount of $250,000.

¶3. All post-trial motions were denied on February 14, 2000. Belmont Homes timely perfected this appeal.

## FACTS

¶4. On October 31, 1994, shortly after 6:00 a.m., Stewart was traveling south on Highway 25 in Itawamba County on her way to work. As Stewart drove into a curve, she reached down to turn her radio dial. The right wheel of her car dropped off the pavement onto the gravel shoulder. The right front tire had dropped

into a rut in the highway shoulder approximately eight to twelve inches deep which ran along the right side of the pavement. Later proof indicated that this ditch-like rut ran continuously for several miles, interrupted only by driveways, mailboxes, and road signs. Stewart attempted to pull out of the rut, lost control of the vehicle, wrecked, and sustained various physical injuries.

¶5. Stewart testified that she was very familiar with this particular stretch of the highway. She stated that there were no obstructions in the roadway itself which caused her to enter the shoulder. She also admitted that the condition of the shoulder did not cause her to leave the paved portion of the roadway.

¶6. Stewart's theory of the case was that Belmont Homes created this rut through its continued transport of mobile homes via Highway 25. Stewart asserts that Belmont Homes' identity as the tortfeasor is evidenced by the fact that the rut begins at the plant's site and continues only down the west or right shoulder of the highway going south. This is the route taken by Belmont Homes' trucks when they are transporting mobile homes to southern destinations such as Louisiana and central or southern Mississippi. The unhitched trucks' return path, that is, the opposite side of the highway, contains no similar rutting.

¶7. Stewart further contends that the rut was caused by "in-line" wheels rather than tandem wheels. Mobile homes are equipped with in-line wheels, while other vehicles, such as logging trucks, gravel trucks, and "18-wheelers" are equipped with tandem wheels. Put simply, in-line wheels are arranged in a single line, each outer wheel attached to a separate axle, as opposed to tandem wheels, where two wheels are mounted side by side and are attached to a common axle. Evidence revealed that many different types of vehicles other than mobile home traffic traveled Highway 25 prior to Stewart's accident and that these other vehicles sometimes left the paved portion of the highway. According to Stewart's theory, if one of the tandem wheels of these other named vehicles leaves the paved portion of the roadway, the remaining wheel supports the axle so that no rutting occurs. This fact, Stewart asserts, excludes other traffic as the primary cause of the rutted condition.

¶8. Wesley Reeves, Stewart's husband, testified that he saw a truck pulling a mobile home run off the road onto the shoulder at the accident site about a week or two before the accident. He stated at trial that the Belmont Homes emblem appeared on the door of the truck. He also stated that he later saw the same truck pulled over with a flat tire near Fulton. Belmont Homes sought to impeach this testimony at trial by introducing statements from Reeves's prior deposition. Reeves testified in the deposition that he did not recall the identity of the truck or mobile home.

¶9. Neal Peach, an engineer with MDOT, testified that the rutted condition of the shoulder was most likely caused by a number of vehicles running off the road over a period of time. Peach also testified that he was responsible for supervising the maintenance of highways in Itawamba County. He testified that MDOT had experienced problems with the shoulder of Highway 25 and that he and his crew would periodically repair the clay gravel shoulder by adding gravel and smoothing it with a grader. After Stewart's accident, MDOT repaired the highway shoulder by filling the rut with asphalt.

¶10. Evidence revealed that MDOT issued permits to Belmont Homes to travel on the highways of the State of Mississippi and that MDOT approved the routes taken.

## ANALYSIS

### I. WHETHER BELMONT HOMES OWED A LEGAL DUTY TO STEWART.

¶11. Whether a duty exists in a negligence case is a question of law to be determined by the court. *Donald v. Amoco Prod. Co.,* 735 So.2d 161, 174 (Miss. 1999). *See also **Ward v. Hobart Mfg. Co.***, 450 F.2d 1176, 1881 (5th Cir. 1971) (applying Mississippi law). Questions of law are reviewed de novo. *In re Estate of Bodman*, 674 So. 2d 1245, 1247 (Miss. 1996).

¶12. Belmont Homes argues that it owed no legal duty to Stewart regarding the condition of the highway shoulder in question. Stewart cites a number of cases in support of her proposition to the contrary that Belmont Homes had a duty to refrain from damaging the highway shoulder.

¶13. In ***United Gas Pipe Line Co. v. Jones***, 236 Miss. 471, 499, 111 So. 2d 240, 250 (1959), this Court stated:

> [A] traveler using a completed highway is expected to use only ordinary care, and one who without right or authority, creates or maintains in, upon, or near a highway a condition which endangers safety of travelers does so at his own peril and is liable for injuries proximately resulting therefrom.

In ***Jones***, United Gas had erected and maintained a concrete post on the shoulder of the highway as a pipeline marker. *Id.* at 242. A driver left the paved portion of the highway and struck the post. *Id.* United Gas argued that the pipeline marker was lawfully located and maintained. *Id.* at 248. This Court held that the company's "authority [to erect and maintain the post] . . . must be strictly construed and cannot lawfully be exercised in such a manner as to constitute a source of danger to the public, or prevent the ordinary use of the highway." *Id.* at 249.

¶14. More recently, in ***W.J. Runyon & Son, Inc. v. Davis***, 605 So. 2d 38, 42 (Miss. 1992), *overruled on other grounds, **Richardson v. APAC-Miss., Inc.***, 631 So. 2d 143 (Miss. 1994), this Court found Runyon, a subcontractor retained to perform paving work on an expansion of Highway 61, negligent in failing to sufficiently water a dust-prone area where the plaintiff had been involved in an accident attributable to dust clouds caused by Runyon's dump trucks. *See also **Mississippi Power & Light Co. v. Lumpkin***, 725 So. 2d 721 (Miss. 1998); ***United Gas Corp. v. Parker***, 252 Miss. 486, 174 So. 2d 370 (1965).

¶15. Like the defendants in the above-cited cases, Belmont Homes was granted special highway privileges. Specifically, Belmont Homes obtained the right to transport overweight, oversized manufactured homes over the state's highways. Permits were issued to Belmont Homes by MDOT pursuant to Miss. Code Ann. § 63-5-51 (Supp. 2000). The permits, however, granted only the right to transport oversized, overweight homes down predetermined routes. They did not grant a license to Belmont Homes to damage the road, nor did the permits operate as a release from liability. As we stated in ***Jones***, the right must be strictly construed and cannot lawfully be exercised in such a manner as to constitute a source of danger to the public or prevent the ordinary use of the highway.

¶16. Belmont Homes asserts that it lacked control over the shoulder of the highway and had no opportunity or right to repair damages, unlike the defendants in the cases cited by Stewart. By statute, MDOT has the duty to maintain and repair the highways and shoulders of the State of Mississippi. Miss. Code Ann. §§ 65-1-1 to -2 & -65 (1991 & Supp. 2000). Neal Peach, District Superintendent for MDOT, testified that this responsibility is non-delegable and that private entities such as Belmont Homes have neither the duty nor the right to repair the highways and shoulders. We do not question this statement of authority. However, this argument is irrelevant. Whether one has a right to repair a damaged highway does not give one the right to damage the highway. An exaggerated fact scenario illustrates this point. If Belmont Homes used dynamite to

blow up Highway 25, it would, indeed, have no right to repair the damage it caused. Yet, it would, nonetheless, be liable for any damages caused by its act. This argument not only lacks precedent; it is illogical and represents an excuse, not a defense.

¶17. We find that Belmont Homes, like all users of public ways, was under a legal duty to refrain from misuse of the highway. We find no merit to this assignment of error.

### II. WHETHER STEWART FAILED TO PROVE THAT BELMONT HOMES BREACHED ANY DUTY.

¶18. Belmont Homes asserts that Stewart failed to prove the requisite breach of duty in this case. Stewart contends that the jury was presented with substantial evidence from which it could conclude, without resorting to speculation, that Belmont Homes' drivers directly caused the majority of the damage to the shoulder of Highway 25.

¶19. The standard of review for jury verdicts has been stated by this Court as follows:

> Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found.

*Junior Food Stores, Inc. v. Rice*, 671 So. 2d 67, 76 (Miss. 1996) (citing **Bell v. City of St. Louis**, 467 So. 2d 657, 660 (Miss. 1985)).

¶20. We have examined the record with this standard of review in mind. We find the jury verdict justified. The record reveals that in the ninety-day period preceding the accident, 1,234 manufactured homes were transported south by Belmont Homes' drivers on Highway 25. Photographs of the accident site show a deep, uniformly shaped, continuous rut running south down the west shoulder of Highway 25. Neal Peach, an MDOT engineer, testified that the rutted condition existed predominantly on the southbound or west side of the shoulder. Similarly, Wesley Reeves testified that the rut extended from the Belmont Homes factory, south for 7.2 miles, to the site of the accident and beyond. Videotape footage shows the repaired rutted condition of the west or right shoulder going south extending throughout the length of Highway 25 from the Belmont Homes plant to and through the site of the accident. Like repairs were not made on the east or left side of the highway. Peach testified that the rut depicted in the photographs is characteristic of one created by a number of vehicles repeatedly running off the road over a sustained period of time.

¶21. Reeves testified that he saw manufactured homes being transported down Highway 25 by Belmont Homes trucks almost every morning. He further testified that he witnessed a manufactured home leave the highway near the accident site within a week prior to Stewart's accident. He stated at trial that he noticed the Belmont Homes emblem on the door of the truck and later saw the same truck pulled over with a flat tire near Fulton. Belmont Homes sought to impeach this testimony at trial by introducing statements from Reeves's prior deposition. Reeves testified in the deposition that he did not recall the identity of the truck or mobile home. Any issues of impeachment as to this evidentiary discrepancy were for the jury to decide.

¶22. Donnie Epps, trucking and service dispatcher for Belmont Homes at the time of the accident, testified that he had received a number of complaints regarding manufactured homes slinging gravel along Highway 25. Highway 25 is a paved highway. This admission indicates that the manufactured homes did, indeed,

leave the road from time to time.

¶23. Several witnesses testified that various types of vehicles travel up and down Highway 25, many often leaving the road. Among the observed culprits were logging trucks, gravel trucks, and "18-wheelers." Peach testified that mobile homes have "in-line" wheels while most of the other named vehicles, such as logging trucks and gravel trucks have "tandem" wheels. Reeves testified from his personal observations that if a tandem wheel leaves the paved portion of the road, the remaining wheel still supports the axle, thereby preventing the "digging" action of a single line of wheels. The evidence indicates that the rut in question was more probably caused by in-line wheels as opposed to tandem wheels; and thus, by mobile home traffic as opposed to other traffic.

¶24. Viewing the evidence as a whole in the light most favorable to the verdict, we cannot say that no reasonable, hypothetical juror could have found as the jury found in this case. Therefore, we find no merit to this assignment of error.

### III. WHETHER THE VIDEOTAPE AND PHOTOGRAPHS PURPORTEDLY SHOWING SUBSEQUENT REMEDIAL MEASURES SHOULD HAVE BEEN SHOWN TO THE JURY OR ALLOWED INTO EVIDENCE.

¶25. Belmont Homes asserts that the trial court violated Rule 407 of the Mississippi Rules of Evidence by allowing into evidence certain photographs and a videotape which revealed subsequent remedial measures. The photographs and videotape depicted Highway 25 where hot mix asphalt had been applied to the shoulder of the highway by MDOT after the accident in October, 1994. The photographs were shown to the jury during Stewart's opening statement and throughout the course of the trial. The videotape was played in its entirety to the jury.

¶26. Stewart argues that the photographs and videotape were offered to identify Belmont Homes as the entity which created the rut in question, rather than to establish negligence. Further, she argues that Rule 407 is inapplicable since the subsequent remedial measure was performed by a third party - in this case, MDOT.

¶27. M.R.E. 407 states as follows:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

¶28. The videotape footage began at Belmont Homes' plant and filmed the repaired rut running along Highway 25 to the accident site. Additional evidence established that during a ninety-day period preceding Stewart's accident, Belmont Homes transported 1,234 mobile homes along this route. Stewart asserts that the videotape reveals the identity of the tortfeasor as Belmont Homes since the footage shows the rutted condition of the west or right shoulder going south. The tape further reveals that such condition did not exist on the left or east side. Some of the photographs depict the accident scene shortly after the accident before MDOT placed asphalt along the shoulder of the road to fill the rut. Some of the photographs and all of the videotape depict the highway after MDOT's repairs. Cumulatively, this proof establishes the damage

occurring when the trucks towing the trailers departed from the plant site. No ruts were indicated on the shoulder along the unhitched trucks' return route. Such proof was relevant to identify the alleged tortfeasor, Belmont Homes.

¶29. Rule 407 allows this type of evidence to be introduced for certain purposes. Identity of the tortfeasor is not one of the specifically enumerated reasons, but such a reason is acceptable, especially in light of the Comment which states, "Rule 407 is more liberal than was the similar Mississippi [common law] practice." Therefore, it was not error to admit the videotape and photographs. We find no merit to this argument.

¶30. Belmont Homes cited *Sawyer v. Illinois Cent. Gulf R.R.*, 606 So. 2d 1069, 1074-75 (Miss. 1992) in support of its proposition that Rule 407 applies even though a third party performed the remedial measures. In *Sawyer*, evidence was admitted that flashing light warning devices were installed at a railroad crossing six months after the subject accident. This Court found the evidence inadmissible and stated, "The present record is uncontradicted that the flashing light warning devises were installed (in part) as a subsequent remedial measure, albeit this was done by public authorities...." *Id.* at 1075. In *Sawyer*, however, the remedial efforts were not offered to establish identity of the tortfeasor. Consequently, *Sawyer* is not apropos on this issue.

### IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING TESTIMONY REGARDING COMPLAINTS OF ALLEGED ACTS OR OMISSIONS OF BELMONT HOMES.

¶31. Belmont Homes cites as error the trial court's admitting testimony regarding certain complaints received by the entity prior to Stewart's accident. Donnie Epps, who was the dispatcher over trucking and service at Belmont Homes at the time of the accident, testified that he had received no complaints regarding mobile homes leaving the highway but had received complaints of homes slinging gravel. Belmont Homes asserts that this testimony was irrelevant and unfairly prejudicial and, thus, should have been excluded pursuant to Rules 402 and 403 of the Mississippi Rules of Evidence.

¶32. There is simply no merit to this argument. Testimony regarding complaints of gravel being slung by the mobile homes is circumstantial evidence that the homes left the **paved** highway on occasion. The evidence is relevant. Further, the trial court did not abuse its discretion in finding that the probative value of the evidence outweighed its prejudicial effect. At worst this testimony may have amounted to inadmissible hearsay. However, no objection was made at trial on such grounds.

¶33. Even if the trial court's admission of this evidence was error, it was harmless error. As this Court has stated:

> No trial is free of error; however to require reversal the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced. *Davis v. Singing River Elec. Power Ass'n*, 501 So. 2d 1128, 1131 (Miss. 1987); *Parmes v. Illinois Cent. Gulf R.R.*, 440 So. 2d 261, 268 (Miss. 1983). Where error involves the admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party. *In re Estate of Mask*, 703 So. 2d 852, 859 (Miss. 1997); *Terrain Enters., Inc. v. Mockbee*, 654 So. 2d 1122, 1131 (Miss. 1995). This Court has held that "[t]he standard of review regarding admission [or exclusion] of evidence is abuse of discretion." *Thompson Mach. Commerce Corp. v. Wallace*, 687 So. 2d 149, 152 (Miss. 1997).

*Fielder v. Magnolia Beverage Co.*, 757 So. 2d 925, 928 (Miss. 1999).

¶34. The trial court did not abuse its discretion in its ruling on this matter. We find no merit to this assignment of error.

### V. WHETHER THE TRIAL COURT ERRED IN REFUSING TO PEREMPTORILY INSTRUCT THE JURY THAT STEWART WAS NEGLIGENT.

¶35. Belmont Homes tendered, off record, jury instruction D-3 which was later amended and given. In its original form, D-3 would have instructed the jury that Stewart was negligent by veering onto the shoulder of Highway 25 due to her inattention. The amended instruction allowed the jury to determine whether Stewart was negligent. It stated as follows:

> The Court instructs the jury that a driver has a duty to maintain reasonable and proper control of his or her own vehicle. Failure to maintain such control is negligence.

> If you find from a preponderance of the evidence that plaintiff's negligence, if any, was the sole proximate cause of the accident, then your verdict must be for the defendants.

> On the other hand, if you find that plaintiff's negligence, if any, was a contributing (rather than the sole) proximate cause of the accident, then you must reduce the plaintiff's award of damages, if any, by the percentage of negligence, if any, attributable to plaintiff.

¶36. Belmont Homes asserts that, although the jury ultimately found Stewart 25 percent at fault, it was error not to peremptorily instruct the jury on Stewart's negligence.

¶37. Stewart contends that this issue is procedurally barred. She is correct in her contention. The record reveals that Belmont Homes made no objection to the amended version of D-3. Belmont Homes asserts that the trial judge did not give Belmont Homes the opportunity to object to the modified instruction. The following exchange occurred regarding D-3:

> THE COURT: D-3 as amended. Any objection by the plaintiffs?

> MR. BUTTS: No objection as amended, your Honor.

> THE COURT: It will be given.

While the trial court did not ask for the defendant's objection, the record does not show that the court prevented Belmont Homes' attorneys from objecting.

¶38. Belmont Homes also asserts that it preserved the issue by raising it in Belmont Homes' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. According to our holding in *Barnett v. State*, 725 So. 2d 797, 801 (Miss. 1998), this assignment of error was too late. There we stated, "While certain issues are required to be raised in a motion for new trial, raising objections there which should have been made at trial has never been thought to cure the failure to object at the proper time." *Id.* Thus, this issue has not been properly preserved and is procedurally barred. Nevertheless, the issue is examined below.

¶39. Belmont Homes cites *Gallent v. Louisville & Nashville R.R.*, 420 So. 2d 1068 (Miss. 1982), in

support of its proposition that the trial court committed reversible error by refusing to peremptorily instruct the jury on Stewart's negligence. This Court stated in *Gallent*, "When the evidence is undisputed as to certain facts, which constitute negligence, it is proper for the court to instruct the jury that the offending party is guilty of negligence." *Id.* at 1071. *Gallent*, however, does not afford the defendant the relief sought. There this Court only found that it was proper for the jury to be instructed "that the offending party [was] guilty of negligence." The Court did not hold that it was reversible error to *fail* to so instruct. Further, Belmont Homes does not cite convincing authority for its contention that veering slightly off the paved portion of a road is negligence as a matter of law. Belmont Homes does cite *Edwards v. Patrick*, 469 So. 2d 92 (Miss. 1985), in which we found the proper granting of a directed verdict as to liability where there was no proof in the record to indicate that the subject accident arose other than by the negligence of the defendant in swerving off the road to avoid hitting an opossum. The swerving in that case was the sole cause of the accident. According to the jury's finding in the present case, Stewart's negligence amounted to only a portion of the fault in her accident. It is entirely proper in this case that the trial court allowed the jury to assess whether Stewart was negligent at all (and, if so, what percentage at fault) rather than instruct the jury that it *must* find her negligent. We find no merit to this assignment of error.

### VI. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT INSTRUCTION D-5.

¶40. Belmont Homes asserts that the trial court erred in refusing to grant its instruction D-5 which, according to Belmont Homes, would have instructed the jury on the applicability of the superceding/intervening cause doctrine in this case. Stewart apparently does not contest the applicability of the doctrine but instead asserts that the instruction was abstract and did not adequately set forth the doctrine.

¶41. The proposed instruction states:

> The court instructs the jury that, if you find from a preponderance of the evidence that defendants caused the alleged rutted condition in question on the shoulder of Highway 25 South, but you also find from a preponderance of the evidence that plaintiff's own negligence superceded any act done by defendants by leading in unbroken sequence to the alleged injuries, then your verdict must be for defendants.

¶42. The instruction contains no definition of "superceding cause" and does not recite the facts to be found by the jury which would constitute such a superceding cause. Further, the instruction failed to inform the jury that the superceding negligence must be the proximate cause of the plaintiff's injuries. *See, e.g.*, *Huff v. Boyd*, 242 So. 2d 698, 701 (Miss. 1971). With the omission of this information, the instruction becomes an incorrect statement of the doctrine of superceding cause. Thus, at best the instruction amounts to a vague statement of a principle of law and at worst is a misstatement of that principle. In *Fred's Stores of Miss., Inc. v. M & H Drugs, Inc.*, 725 So. 2d 902 (Miss. 1998), we stated:

> The test to determine whether or not an instruction is abstract is to determine whether or not the instruction relates to facts shown by the evidence on the issues involved in the case. If an instruction merely relates a principle of law without relating it to an issue in the case, it is an abstract instruction and should not be given by the Court.

*Id.* at 918. Proposed instruction D-5 does not adequately meet this test. This is not to say, however, that

Belmont Homes was not entitled to an instruction regarding superceding cause. Nevertheless, since Belmont Homes did not propose an instruction that passes muster, we do not find the trial court in error for refusing to instruct on superceding cause. We find no merit to this assignment of error.

## VII. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF WESLEY REEVES.

¶43. Wesley Reeves, Stewart's husband, testified that he had observed gravel trucks, logging trucks, and 18-wheelers travel on Highway 25, some leaving the paved portion of the roadway from time to time. He testified that these vehicles have tandem wheels and that "if one of these wheels gets off the road, the other wheel still supports the axle." Counsel for Belmont Homes objected to this testimony on the grounds of competency, and the objection was overruled.

¶44. Belmont Homes now contends that the testimony presupposed "scientific, technical, or other specialized knowledge," thereby requiring that Reeves be qualified as an expert pursuant to Rule 702 of the Mississippi Rules of Evidence. According to Belmont Homes, since Reeves was not qualified or tendered as an expert, this testimony should have been excluded. Belmont Homes also asserts that the testimony did not qualify as lay opinion testimony under M.R.E. 701.

¶45. Since Belmont Homes only objected on the grounds of competency, issues regarding Rules 701 and 702 have not been properly preserved. *See, e.g.*, ***Collins v. State***, 594 So. 2d 29, 35 (Miss. 1992) (holding that defendant's failure to object as to prejudicial impact of testimony precluded the issue from being addressed on appeal even though defendant had objected as to the relevance of the same testimony). Belmont Homes asserts that "the point to which the general objection is taken is obvious," and that "the court clearly had the particular ground of objection in mind. . . ." *See* 4 C.J.S. *Appeal and Error* § 215, at 296 (1993) (footnotes omitted). Yet, the subject of competency falls under an entirely different evidentiary rule than the subject of expert and lay opinion testimony. We agree with Belmont Homes' assertion that the point to which the objection is taken is, indeed, obvious. However, that point is competency-not impermissible expert or lay opinion testimony.

¶46. Even if Belmont Homes properly preserved the issue for appeal, the issue is without merit. Assuming arguendo that the testimony in question is opinion testimony, it was properly admitted under Rule 701. Rule 701 limits non-expert opinions or inferences to those which are "(a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue." We have established a bright line rule for distinguishing between expert and lay opinion testimony. In ***Sample v. State***, 643 So. 2d 524, 529 (Miss. 1994), this Court stated:

> [W]here, in order to express the opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a Miss. R. Evid. 702 opinion and not a Rule 701 opinion. ***Mississippi State Highway Comm'n v. Gilich***, 609 So. 2d 367, 377 (Miss. 1992) (lay opinions are those which require no specialized knowledge however attained)....

¶47. Reeves testified that his statement was based on his own observations. Thus, his testimony met the first requirement of Rule 701. The testimony is also helpful to the determination of a fact in issue, thus falling within the second requirement of Rule 701. Furthermore, it does not take any specialized education, experience, or training for a randomly selected adult to observe that tandem wheels are mounted on a common axle. Therefore, Rule 702 is inapplicable in this instance.

¶48. We find that Reeves's testimony was properly admitted and that there is no merit to this assignment of error.

## CONCLUSION

¶49. We find that Belmont Homes owed a duty to Stewart regarding the condition of the shoulder of Highway 25. We further hold that the jury was correct in finding that Belmont Homes breached that duty and caused Stewart's damages. For the foregoing reasons, the judgment of the Itawamba County Circuit Court is affirmed.

¶50. **AFFIRMED.**

> **PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, WALLER, DIAZ AND EASLEY, JJ., CONCUR. COBB, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, J.**

> **COBB, JUSTICE, CONCURRING:**

¶51. I agree (with some reservation) with the majority opinion. However, mindful of the concern that bad facts often make bad law, I write this special concurrence to show why the particular facts of this case are unusual and should not be construed in a way that will put this state's mobile home industry out of business. As the majority correctly points out, Belmont Homes did not have a license to damage Mississippi highways, and the fact that only the MDOT was permitted to repair such damage does not absolve Belmont Homes of liability. However, it is my view that Belmont Homes could have absolved itself of that liability had it been able to show that the MDOT's actions constituted a superceding cause. Restatement (Second) of Torts § 440 (1965). *See **[Southland Management Co. v. Brown ex rel. Brown](#)**, 730 So.2d 43 (Miss. 1998).

¶52. For example, had Belmont Homes been able to show that it warned the MDOT that the ruts had reappeared and then MDOT had waited an unreasonably long time to make repairs, Belmont's position would have been quite different. Likewise, if Belmont Homes had been able to show that the MDOT knew that its earlier repairs were ineffectual and that the MDOT was, therefore, negligent in not applying the hot gravel mix earlier. Such evidence, if it existed, could have substantially limited or even eliminated Belmont Homes' liability. To expand on the majority's example, if Belmont Homes had blown up Highway 25 with dynamite, its liability for any damages occurring thereafter would be different if the MDOT had failed to make necessary repairs in the meantime. Under this analysis, businesses like Belmont Homes should be encouraged to act as a watchdog for the MDOT in order to minimize their own liability and protect the public's interest as well.

¶53. In the case at bar, Belmont Homes had every opportunity to question a representative of the MDOT on these issues, but apparently declined to do so. Instead, Belmont Homes limited its defense to denying responsibility for the road conditions even though there was substantial pictorial evidence[1] that it was responsible for much of the damage. Furthermore, Belmont Homes apparently acquiesced to the MDOT's dismissal as a defendant, which left only phantom defendants onto whom Belmont Homes could try to shift the blame for the ruts. Given the substantial pictorial evidence supporting Stewart's theory of the case, this strategy seems to have dug a hole for Belmont Homes almost as deep as the ruts on Highway 25.

**WALLER, J., JOINS THIS OPINION.**

1. A classic illustration of the old adage "a picture speaks louder than a thousand words."